# In the United States Court of Federal Claims

No. 00-703 C
(Filed: September 30 , 2004)

| | | |
|---|---|---|
| **POWER AUTHORITY OF THE STATE OF NEW YORK,** Plaintiff, | * | Motion to Strike; FRE 408; Settlement; Spent Nuclear Fuel; Rate of Acceptance |
| v. | * | |
| **THE UNITED STATES,** Defendant. | * | |

## OPINION AND ORDER

The instant action concerns Defendant's Motion to Strike Portions of Plaintiff's Filings Concerning the Rate of Acceptance of Spent Nuclear Fuel. For the reasons stated below, Defendant's Motion is GRANTED.

I. **Background**

Defendant seeks to strike portions of Plaintiff's filings opposing Defendant's pending motion for partial summary judgment on the rate of acceptance of spent nuclear fuel (SNF). Specifically, Defendant objects to (1) paragraphs 181 and 182 of Plaintiff's proposed findings of uncontroverted fact regarding the rate of acceptance, (2) pages 690 through 694 of Plaintiff's appendix filed in support of its proposed findings, and (3) paragraph 8 on page 38 of Plaintiff's opposition[1] to Defendant's rate of acceptance motion. According to Defendant, these portions of Plaintiff's filings attempt to introduce into evidence, contrary to Federal Rule of Evidence 408 (FRE 408), the substance of a settlement agreement in 2000 between the Department of Energy (DOE) and another nuclear utility, PECO Energy Company (now Exelon Generation Company). In its proposed finding No. 182, for example, Plaintiff suggests that DOE's settlement agreement with PECO provides "evidence of the intended acceptance rate of SNF by stating that DOE 'intends to operate the repository at a steady rate of 3000 MTUs[2]. . . .'"

---

[1] Defendant must mean the 6th bulleted item on page 38 of Plaintiff's opposition.

[2] Metric tons of uranium.

As such, Defendant argues, Plaintiff runs afoul of FRE 408, which provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

FRE 408.

Plaintiff avers that the PECO-Government agreement is not being offered to prove liability or damages, but rather for two other purposes: 1) as evidence of the "Government's intent to use the 3,000 metric tons of uranium ('MTU') steady-state rate, "as stated in virtually all programmatic documents"; and 2) to rebut Defendant's assertions in its summary judgment briefs on the proper rate of SNF acceptance." Pl.'s Opp'n at 1.

II. **<u>Discussion</u>**

Defendant properly notes that the policy behind FRE 408 is the encouragement of settlements. *See Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1308 (Fed. Cir. 2001) ("[W]e are mindful . . . of the policy in favor of protecting settlement negotiations from being admitted as evidence, thus serving to encourage settlements."). Even where the settlement agreement in question involved the same defendant but a different plaintiff, "[i]f such evidence were routinely allowed in subsequent lawsuits, it would give any litigant pause before settling." *Abundis v. United States*, 15 Cl. Ct. 619, 621 (1988). As Plaintiff properly notes, however, "settlement offers are only inadmissible *when offered to prove liability or damages*." *Coakley & Williams Constr., Inc. v. Structural Concrete Equip., Inc.*, 973 F.2d 349, 353 (4th Cir. 1992) (emphasis added). The question, then, is whether Plaintiff's stated grounds for utilizing the PECO-Government settlement agreement comport with the exceptions to FRE 408's general proscription.

The rule permits the admission of evidence, in certain circumstances, to show a defendant's knowledge and intent. *Bankcard Am., Inc. v. Universal Bancard Sys., Inc.*, 203 F.3d 477, 484 (7th Cir. 2000) (citing *United States v. Hauert*, 40 F.3d 197, 199-200 (7th Cir. 1994)). In *Bankcard*, the court allowed the defendant's corporate president to explain his state of mind in

the course of ultimately unfruitful settlement talks in order to provide the context for the defendant's defense to a breach of contract claim. "[I]t would be an abuse of Rule 408 to let Bankcard lull Universal into breaching the contract and then prevent Universal from explaining its actions because the lulling took place around the settlement table." *Id.* The court's holding suggests that the rule cannot be used as a trap. Defendant's testimony was admitted, despite a seeming nexus to the question of liability, because a less nuanced approach to Rule 408 would have been unfair and contrary to the spirit of the rule.

> Rule 408's spirit and purpose must be considered in its application. The purpose of Rule 408 is to encourage settlements. Settlements will not be encouraged if one party during settlement talks seduces the other party into violating the contract and then, when a settlement ultimately is not reached, accuses the other party at trial of violating the contract. To use Rule 408 to block evidence that the violation of the contract was invited would be unfair.

*Id.* (internal citations omitted).

In *Hauert*, the government was allowed to admit evidence to show a criminal defendant's knowledge and intent regarding his obligation to report and pay taxes. The government introduced the evidence to counter a defense based on a "good faith misunderstanding of the law." *Hauert*, 40 F.3d at 199. Because the government's evidence was obtained from settlement negotiations with Mr. Hauert in an earlier civil tax case, he objected to its admission as "contrary to the policy concerning settlement." *Id.* The court held, however, that the government's use of the evidence – to show that Mr. Hauert had previously been made aware of his tax obligations under the law – qualified as "another purpose" under Rule 408. *Id.* at 200.

In another case on which Plaintiff relies here, the Fourth Circuit allowed introduction of evidence by one party to show the other party's "understanding of its obligations under [a] joint check agreement," and to establish in fact that the one party had made demand upon the other for payment. *Bituminous Constr., Inc. v. Rucker Enters., Inc.*, 816 F.2d 965, 969 (4th Cir. 1987).

Defendant cites, but distinguishes, an additional case in which a settlement offer was admitted to show intent. In *Coakley & Williams Constr., Inc. v. Structural Concrete Equip., Inc.,* 973 F.2d at 353, the court allowed introduction of a settlement *offer* as extrinsic evidence of the parties' intent regarding release language in a subsequent construction project settlement agreement based on the offer. One of the parties to the settlement agreement later sued the other for fraudulent and negligent inducement in connection with the release. While the settlement agreement and the terms of the release were plainly pertinent to the question of whether the fraudulent inducement suit should be dismissed on summary judgment, the court also allowed admission of the settlement offer, not to prove liability or damages, but rather for the ancillary purpose of showing the intent behind the possibly ambiguous release clause. *Id.* at 353-54. Defendant here argues that *Coakley* is inapt, because Plaintiff is patently using the PECO

settlement language to prove damages rather than to illuminate the parties' intent regarding any ambiguous term in the PECO settlement itself. Def.'s Reply at 5.

Finally, in *Friedus v. First Nat'l Bank of Council Bluffs*, 928 F.2d 793, 794-95 (8th Cir. 1991), the court upheld the defendant's introduction of correspondence during the course of earlier settlement negotiations to rebut certain of plaintiff's testimony at trial. A witness for the plaintiff had stated that defendant had failed, "even up to [the] date" of trial, to give any reasons for conditions the bank imposed on the resale of property under a contract for deed. *Id.* at 795. The court found the challenged evidence properly admissible because it "negativ[ed] a contention of undue delay," one of the specified exceptions for exclusion under Rule 408. *Id.*

Despite the foregoing examples of cases in which Rule 408 was held not to bar introduction of evidence at least tangential to settlement discussions, Plaintiff's proposed introduction of the PECO settlement does not fit comfortably within the boundaries of that authority. Plaintiff's plain purpose for admission of the PECO settlement is to demonstrate the government's intent or policy to operate a permanent repository for SNF capable of accepting 3,000 MTUs per year as well as to rebut the government's arguments in favor of a lesser rate of acceptance shown in allegedly binding Delivery Commitment Schedules. Yet the rate of acceptance question is closely related to the issue of damages in this litigation. Thus, Plaintiff's characterization of the PECO settlement as evidence of "intent" amounts to a mere ritual intonation of permissible purpose but in substance does not establish an exception to Rule 408. *See Dow Chem. Co. & Subsidiaries v. United States*, 250 F. Supp. 2d 748, 805 (E.D. Mich. 2003) ("Asserting that a statement is offered as impeachment will not alone establish an exception to Rule 408.").

In *Abundis*, 15 Cl. Ct. at 621, cited by both parties here, the court held that a prior settlement stipulation was so "obviously relate[d] to liability" that its proposed introduction for "some other purpose" was unsustainable. In *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989), the Court of Appeals for the Second Circuit noted that the proferred introduction of a document from a settlement offer in order to satisfy the statute of frauds was necessarily the first step to proving a claim for breach of contract. In language similar to that of the court in *Abundis*, the Second Circuit thus held that "[s]ince the two questions were so closely intertwined, admission of the documents even initially for the purpose of meeting the statute of frauds requirement would, under the circumstances of this case, militate against the public policy considerations which favor settlement negotiations and which underlie Rule 408." *Id.* In a related vein, the Court of Appeals for the Federal Circuit found no manifest error in the rejection of settlement communications offered to show a culpable state of mind under the other purpose exception of the Rule. *Nat'l Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1197 (Fed. Cir. 1996).

What Plaintiff describes as an effort to demonstrate the government's "intent" on the rate of acceptance, qualifying therefore, according to Plaintiff, as an "other purpose" under Rule 408, amounts more so to a step toward proving damages. The nexus between the questions of rate and

damages is sufficiently close and the factual inquiries so closely intertwined that the purpose and spirit of Rule 408 would be contravened by the admission of the PECO settlement.

Finally, when the applicability of Rule 408 is a close call, the court should lean toward exclusion. *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1364 (10th Cir. 1987). Given Plaintiff's acknowledgement that "virtually all programmatic documents" indicate the government's intent to utilize a 3,000 MTU acceptance rate, Pl.'s Opp'n at 1, exclusion of the PECO settlement ought not to work a hardship on Plaintiff's ability to mount its case on the rate of acceptance issue.

## III. **Conclusion**

For the reasons stated above, Defendant's motion to strike is GRANTED. Plaintiff may not offer or rely on evidence of the PECO-government agreement and the Court will disregard the portions of Plaintiff's filings as identified by Defendant in its motion to strike.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge