IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NORTHERN STATES POWER COMPANY, Plaintiffs, | ) | No. 98-484C (Senior Judge Wiese) |
| v. | ) | |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING PREJUDGMENT INTEREST

Pursuant to Rule 56(b) of the Rules of this Court ("RCFC"), defendant, the United States, respectfully requests that this Court grant summary judgment in defendant's favor upon the issue of plaintiff's claim for prejudgment interest. As set forth in the report prepared by its damages experts, plaintiff, Northern States Power Company ("NSP"), adjusts its damage claim by applying NSP's alleged "after-tax weighted average cost of capital" to damages incurred each year. This adjustment constitutes a claim for prejudgment interest against the Government, which is prohibited by law. There are no genuine issues of material fact that would preclude judgment as a matter of law in defendant's favor. In support of our motion, we rely upon the following brief and appendix, the accompanying proposed findings of uncontroverted fact, and the pleadings filed by the parties in this case.

DEFENDANT'S BRIEF

STATEMENT OF FACTS

The facts pertinent to our motion are set forth in our proposed findings of uncontroverted fact, which we respectfully incorporate herein.

The Kenrich report was submitted on August 1, 2005, and represents NSP's claim for damages. DPFUF ¶1.[1] The Kenrich report "summarizes the quantification of damages resulting from the Department of Energy's ('DOE') failure to perform its contractual obligation to remove spent nuclear fuel ('spent fuel') generated at Northern States Power's ('NSP') Prairie Island Nuclear Generating Plant ('Prairie Island') and Monticello Nuclear Generating Plant ('Monticello')." DPFUF ¶3.

The Kenrich report includes damages that allegedly were incurred each year from 1989 through 2004. DPFUF ¶2. The Kenrich report represents NSP's alleged damages in both nominal dollars and 2005 dollars. DPFUF ¶4. In the Kenrich report, NSP's experts define nominal dollars as follows: "[t]he term 'nominal dollars' means the actual dollars spent or expected to be spent in each of the relevant years. Nominal dollars are unadjusted for the effects of financing (past) or the time value of money (future)." DPFUF ¶5. Throughout the Kenrich report, "past damages are restated in 2005 dollars by applying NSP's after-tax weighted average cost of capital from the middle of each year in which damages were incurred through December 31, 2005." DPFUF ¶6. In the Kenrich report, Kenrich later clarifies that, in order to restate NSP's damages into their present value, ". . . calculations were performed to take into account <u>the time value of money</u> for past and future damages, resulting in a measurement of NSP's damages in 2005 dollars." DPFUF ¶7 (emphasis added). NSP alleges $110 million in total

[1] "DPFUF ¶___" refers to Defendant's Proposed Findings of Uncontroverted Fact, which are being filed concurrently with this motion. "App. __" refers to the appendix to this motion. "<u>Report</u>" refers to the Kenrich report, which NSP filed with the Court as Docket Entry No. 240 on October 26, 2005.

damages when the alleged damages are calculated in nominal dollars – that is, actual incurred costs. However, NSP's claim rises to $163 million in 2005 dollars. DPFUF ¶8.

Mr. Kenneth P. Metcalfe, the President of The Kenrich Group, testified in his deposition that NSP's damages were adjusted from nominal dollars to present value money in order to compensate for "the time value of money, all the components; and the weighted average cost of capital, which would include inflation, the fact that the utility has spent dollars that are not worth as much today, the normal time value of money, and the risks of the companies' overall risk in the general marketplace." DPFUF ¶9. When asked whether interest would compensate for the same type of lost value, Mr. Metcalfe testified, "I suppose at [a] certain level of interest, depending on how high it was, it would compensate for the same type of things." DPFUF ¶9.

## ARGUMENT

### I. THE STANDARD OF REVIEW

The procedure of summary judgment is properly regarded not as a disfavored shortcut, but, rather, as an integral part of the Court rules as a whole, designed to secure a just, speedy, and inexpensive determination of every action. Spirit Leveling Contractors v. United States, 19 Cl. Ct. 84, 89 (1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)); accord Sweats Fashions, Inc. v. Pannill Knitting, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987). "The focus in determining whether summary judgment is appropriate is the lack of disputed material facts. A material fact has been defined as a fact that will make a difference in the outcome of a case." Curtis v. United States, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied, 361 U.S. 843 (1959). Stated differently, only disputes over facts that might affect the outcome of a

suit will properly prevent an entry of judgment. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).

As the moving party, defendant may discharge its burden by demonstrating an absence of evidence as to an essential element of plaintiff's cause of action. Celotex, 477 U.S. at 322-25. If defendant makes this threshold showing, the burden shifts to the plaintiff to adduce evidence sufficient to create a genuine issue of material fact. Failure to make this evidentiary showing is fatal to plaintiff's claim and entitles the movant to judgment as a matter of law.

## II. NSP'S CLAIM FOR DAMAGES IN 2005 DOLLARS AMOUNTS TO A CLAIM FOR PREJUDGMENT INTEREST, WHICH IS NOT ALLOWABLE AGAINST THE GOVERNMENT

### A. Interest Is Not Recoverable Against The United States Government Under The Standard Contract

"Interest is not recoverable in a suit against the government unless it has expressly provided for its recovery." Jetco, Inc. v. United States, 11 Cl. Ct. 837, 850 (1987); see Craft v. United States, 233 F.3d 358, 374 (6th 2000) ("A plaintiff may not recover interest from the federal government in the absence of an express waiver of sovereign immunity from suit."). Indeed, the "no-interest rule is an aspect of the basic rule of sovereign immunity." England v. Contel Advanced Systems, Inc., 384 F.3d 1372, 1379 (Fed. Cir. 2004). In fact, the prohibition on awarding interest against the Government is so well established in this Court that it has been referred to as "the ancient doctrine disallowing interest against the Government." Singer Co, Librascope Div. v. United States, 215 Ct. Cl. 281, 568 F.2d 695, 698 (1977).

The no-interest rule is codified in 28 U.S.C. § 2516(a) (1976), which precludes interest upon a claim against the United States unless specifically permitted under a contract or Act of Congress. "In creating the Court of Claims, Congress retained the Government's immunity from

award of interest, permitting it only where expressly agreed to under contract or statute." Library of Congress v. Shaw, 478 U.S. 310, 317 (1986). Further, a provision requiring the Government to pay interest "must be affirmative, clear-cut, [and] unambiguous." United States v. Thayer-West Print Hotel Co., 329 U.S. 585, 590 (1947). There has been no contractual or congressional waiver of sovereign immunity under the Standard Contract. Therefore, plaintiff is subject to the no-interest rule.[2]

The no-interest rule applies "broadly to claims for interest" and encompasses claims for prejudgment interest. Contel Advanced Systems, Inc., 384 F.3d at 1379. As this Court recently recognized, "[s]tatutory entitlement to prejudgment interest or a cost escalation factor must be established for the United States to be held liable for these types of claimed costs." District of Columbia v. United States, 67 Fed. Cl. 292, 340 (2005). "There is no doubt as to the historical existence of an entrenchment immunity of the Government from prejudgment interest . . . ." Blake v. Califano, 626 F.2d 891, 893 (D.C. Cir. 1980).

B. NSP's Restated Damages Include Prejudgment Interest

NSP has inappropriately included $53 million of prejudgment interest in its damages claim. Report, at 15. When calculating NSP's alleged damages, Kenrich first determined the alleged dollar amount in nominal dollars for each year in which NSP incurred damages.

[2] Although the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601-613, waives the Government's sovereign immunity with regard to interest on certain claims, see Brookfield Constr. Co. v. United States, 228 Ct.Cl. 551, 559, 661 F.2d 159, 165 (1981) ("Because there can be no award of interest against the United States in the absence of a 'contract . . . or Act of Congress expressly providing for payment thereof,' 28 U.S.C. § 2516(a) (1976), the only way plaintiff can recover interest is if the Contract Disputes Act provides for it."), the Standard Contract is not subject to the CDA, as the United States Court of Appeals for the Federal Circuit recognized in Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336, 1340 (Fed. Cir. 2000).

DPFUF ¶5. Then, Kenrich "grossed-up" those cost figures to 2005 dollars, also known as "real" dollars or present value dollars. DPFUF ¶6. "Nominal dollars retain their number over time, while real dollars retain their value." Sandstrom v. Principi, 358 F.3d 1376, 1377 n.1 (Fed. Cir. 2004). For example, ". . . one nominal dollar in 1969 . . . remained one nominal dollar in 1996 . . . One real dollar in 1969, however, would retain its purchasing power, and would have been worth between four and five nominal dollars by 1996." Id. In other words, Kenrich "grossed-up" NSP's damages to account for the "time value of money." DPFUF ¶7. Such "time value of money" claims are equivalent to claims for interest. Transmatic, Inc. v. Gulton Indus., Inc., 180 F.3d 1343, 1347-48 (Fed. Cir. 1999) (citing Black's Law Dictionary (6th ed. 1990) (defining "interest" as "compensation for the use or forbearance of money owed."). Since interest is not recoverable against the Government, plaintiff's claim for damages in 2005 dollars fails as a matter of law.

This Court considered a similar claim – raised by the same plaintiff's counsel – in Indiana Michigan Power Co. v. United States, 60 Fed. Cl. 639 (2004), aff'd, 422 F.3d 1369 (Fed. Cir. 2005). There, the plaintiff stated all costs "both in nominal terms, as of the day the costs were or will be incurred, and in present value," with present value "add[ing] an escalation factor for past costs." Id. at 653. This Court found that this application of "plaintiff's average after-tax cost of capital to damages incurred each year . . . is prejudgment interest, which is not allowable against the United States absent a specific waiver of sovereign immunity." Id. at 660. By restating its damages in "2005 dollars," NSP attempts to circumvent the established rule that interest is not recoverable against the Government.

NSP's claim for damages in 2005 dollars is a thinly veiled attempt to recover prejudgment interest against the Government. "The force of the no-interest rule cannot be avoided simply by devising a new name for an old institution." Library of Congress, 478 U.S. at 321. As the Court of Claims explained in United States v. Mescalero Apache Tribe, 207 Ct. Cl. 369, 518 F.2d 1309, 1322 (1979), ". . . the character or nature of 'interest' cannot be changed by calling it 'damages,' 'loss,' 'earned increment,' 'just compensation,' 'discount,' 'offset,' or 'penalty,' or any other term, because it is still interest and the no-interest rule applies to it." Id. at 1322. Further, ". . . the 'No-Interest Rule' precludes circumvention through re-characterizing a claim for interest as a claim for damages." Chevron U.S.A., Inc. v. United States, No. 04-1365C, 2006 WL 1493822, at *43 (Fed. Cl. May 31, 2006). "[I]n the absence of a clear, explicit waiver of sovereign immunity from liability for interest, the United States government . . . pays all judgments and amounts due in what economists call 'nominal dollars' rather than in economic 'real dollars' . . . ." Sandstrom, 358 F.3d at 1377. "The relationship between real and nominal dollars is governed by inflation. Interest paid at the rate of inflation allows payments to retain their real value." Id.

In Indiana Michigan, 60 Fed. Cl. at 653, this Court found that "[p]resent value adds an escalation factor for past costs" and disallowed the present value as amounting to prejudgment interest. Similarly, in Castle v. United States, "[t]he prohibition extends to any form of award for the time value of money that has not been authorized by the express terms of the transaction sued on." 48 Fed. Cl. 187, 217 (2000), aff'd in relevant part, 301 F.3d 1328 (Fed. Cir. 2002); see Town of Grantwood v. United States, 55 Fed. Cl. 481, 488 (2003); Pacific Gas & Electric v. United States, 58 Fed. Cl. 1, 2 (2003).

The deposition testimony of Mr. Metcalfe, President of The Kenrich Group, affirms that the recalculation of nominal dollars into 2005 dollars amounts to prejudgment interest. As previously discussed, Mr. Metcalfe explained in his deposition that nominal dollars are recalculated into 2005 dollars in order to compensate for "the time value of money, all the components; and the weighted average cost of capital, which would include inflation, the fact that the utility has spent dollars that are not worth as much today, the normal time value of money, and the risks of the companies' overall risk in the general marketplace." App. 13. In a breach of contract case, "[p]rejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered." West Virginia v. United States, 479 U.S. 305, 310 n.2 (1987). The "components" of the re-calculation performed by The Kenrich Group are the components of disallowed prejudgment interest.

In fact, in his deposition, Mr. Metcalfe agreed that "interest . . . would compensate for the same type of things" compensated for by the recalculation of nominal dollars into 2005 dollars. App. 13. When asked to differentiate between the conversion of nominal dollars into present value dollars and the inclusion of interest, Mr. Metcalfe stated, ". . . what we are doing is adjusting for the components of the utilities' own weighted average cost of capital, which includes its recovery of inflation. It includes its own historic cost of money, general historic cost of money, plus the risk that the utility has in terms of its operating environment in its business, so its debt and its equity payments." App. 13-14. Mr. Metcalfe also admitted that "interest is embedded within" the conversion of nominal dollars into 2005 dollars. App. 14. Cost of capital adjustments of this sort are "prejudgment interest" and are not allowable against the Government. Indiana Michigan, 60 Fed. Cl. at 660.

As previously discussed, "[i]t is clear from the jurisprudence of this court and higher courts that no matter what term plaintiff uses, compensation for the belated receipt of money violates the no-interest rule absent an express statutory waiver of sovereign immunity from liability for interest." District of Columbia, 67 Fed. Cl. at 341. When NSP claims damages in 2005 dollars, NSP violates the no-interest rule by asserting a claim equivalent to prejudgment interest. Accordingly, this Court should bar NSP from presenting any evidence at trial of this matter regarding its request for a recalculation of its damages into 2005 dollars. Moreover, this Court should strike NSP's "2005 dollar" or "present value" claim from this litigation.

CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court grant summary judgment in the Government's favor upon the issue of NSP's claim for damages in 2005 dollars.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

s/ Heide L. Herrmann
HEIDE L. HERRMANN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305-3315
Fax: (202) 307-2503

July 28, 2006

Attorneys for Defendant

# APPENDIX

# INDEX TO APPENDIX

Document Page

Pages from deposition of Kenneth P. Metcalfe, dated June 21, 2006 . . . . . . . . . . . . . . . . . . . . . . 10

COPY

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - x

NORTHERN STATES POWER COMPANY, :

:

Plaintiff, : No. 98-484C

: (Senior Judge Wiese)

v. :

: Volume II

THE UNITED STATES, :

:

Defendant. :

- - - - - - - - - - - - - - - - x

Washington, D.C.

Wednesday, June 21, 2006

Continued Deposition of:

KENNETH P. METCALFE,

called for examination by counsel for the Defendant, at the Offices of The U.S. Department of Justice, 1100 L Street, N.W., 10th Floor, Washington, D.C., before Barbara A. Huber, court reporter and notary public in and for the District of Columbia commencing at 9:05 a.m., when were present on behalf of the respective parties:

opportunity lost isn't. So if Utility Engineering is working on a PFS project and it could, in fact, be doing other productive work for either its -- the company or others, that it would be doing that work instead, so --
**Q Did you analyze specifically what work Utility Engineering would have been doing had it not been doing this work?**
A No. We did not.
**Q You can put the binder away.**
A Thank you.
**Q I want to ask you a couple questions.**
**We talked yesterday about the adjustment you made from nominal dollars --**
A Yes.
**Q -- to present value money?**
A Yes.
**Q Do you recall that?**
A Yes.
**Q Okay. And is that to compensate for the time value of money?**
A I think we discussed this yesterday.



But time value of money, all the components; and the weighted average cost of capital, which would include inflation, the fact that the utility has spent dollars that are not worth as much today, the normal time value of money, and the risks of the companies' overall risk in the general marketplace.
**Q Does interest compensate for the same type of things?**
A I suppose at certain level of interest, depending on how high it was, it would compensate for the same type of things.
**Q So how is adjusting the kind of adjustment that you made, from nominal dollars into present value dollars, different than simply adding interest?**
A Because what we're doing is adjusting for the components of the utilities' own weighted average cost of capital, which includes its recovery of inflation. It includes its own historic cost of money, general historic cost of money, plus the risk that the utility has in terms



of its operating environment in its business, so its debt and its equity payments.
**Q So it's -- the difference is that it's more specifically geared toward compensating for certain things than interest is?**
A Well, it's a true economic cost of the utility. I mean, there are -- interest is embodied within it, for example, in interest payments on the debt.
**Q You recall in your -- in previous opinions that you've given for other cases you've included the same kind of adjustment, correct?**
A Same type of adjustment, yes.
**Q Do you recall how the court ruled in any of those cases regarding your adjustment for the time value of money?**
A We're talking about spent fuel cases?
**Q Yes.**
A I don't think we've received any ruling.
**Q Indiana/Michigan?**
A I didn't testify.
**Q You submitted a report in that case,**



**right?**
A No.
**Q Oh. That's my mistake.**
A No problem.
**Q I'm sure I was thinking of something else. Let me ask you this.**
**Because you have testified in some cases, some spent nuclear fuel cases --**
A Yes.
**Q -- in which you've performed the same type of calculation, correct?**
A The same general calculation.
**Q I'm just wondering whether the calculation that you performed in this case is any different for any reason?**
A Outside of the main difference that it uses NSP's weighted average cost of capital, I would say generally they're the same. It's to make the utility economically whole for the damages that it's incurred.
**Q And I think I've identified the source of the problem, that Tucker Alan submitted a**

opportunity lost isn't. So if Utility Engineering is working on a PFS project and it could, in fact, be doing other productive work for either its -- the company or others, that it would be doing that work instead, so --

Q Did you analyze specifically what work Utility Engineering would have been doing had it not been doing this work?

A No. We did not.

Q You can put the binder away.

A Thank you.

Q I want to ask you a couple questions.

We talked yesterday about the adjustment you made from nominal dollars --

A Yes.

Q -- to present value money?

A Yes.

Q Do you recall that?

A Yes.

Q Okay. And is that to compensate for the time value of money?

A I think we discussed this yesterday.

But time value of money, all the components; and the weighted average cost of capital, which would include inflation, the fact that the utility has spent dollars that are not worth as much today, the normal time value of money, and the risks of the companies' overall risk in the general marketplace.

**Q Does interest compensate for the same type of things?**

A I suppose at certain level of interest, depending on how high it was, it would compensate for the same type of things.

**Q So how is adjusting the kind of adjustment that you made, from nominal dollars into present value dollars, different than simply adding interest?**

A Because what we're doing is adjusting for the components of the utilities' own weighted average cost of capital, which includes its recovery of inflation. It includes its own historic cost of money, general historic cost of money, plus the risk that the utility has in terms

of its operating environment in its business, so its debt and its equity payments.

Q So it's -- the difference is that it's more specifically geared toward compensating for certain things than interest is?

A Well, it's a true economic cost of the utility. I mean, there are — interest is embodied within it, for example, in interest payments on the debt.

Q You recall in your -- in previous opinions that you've given for other cases you've included the same kind of adjustment, correct?

A Same type of adjustment, yes.

Q Do you recall how the court ruled in any of those cases regarding your adjustment for the time value of money?

A We're talking about spent fuel cases?

Q Yes.

A I don't think we've received any ruling.

Q Indiana/Michigan?

A I didn't testify.

Q You submitted a report in that case,

right?

A No.

Q Oh. That's my mistake.

A No problem.

Q I'm sure I was thinking of something else. Let me ask you this.

Because you have testified in some cases, some spent nuclear fuel cases --

A Yes.

Q -- in which you've performed the same type of calculation, correct?

A The same general calculation.

Q I'm just wondering whether the calculation that you performed in this case is any different for any reason?

A Outside of the main difference that it uses NSP's weighted average cost of capital, I would say generally they're the same. It's to make the utility economically whole for the damages that it's incurred.

Q And I think I've identified the source of the problem, that Tucker Alan submitted a

CERTIFICATE OF FILING

I hereby certify that on this 28th day of July 2006, a copy of foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING PREJUDGMENT INTEREST" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harold D. Lester, Jr.