No. 98-484C
( Senior Judge Wiese )

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

NORTHERN STATES POWER COMPANY,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

---

# DEFENDANT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY REGARDING MINNESOTA STATE LEGISLATION

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Heide L. Herrmann
HEIDE L. HERRMANN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305-3315
Fax: (202) 307-2503
Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

October 4, 2006

**TABLE OF CONTENTS**

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I. THE COURT HAS THE POWER AND THE DUTY TO GRANT MOTIONS *IN LIMINE* TO LIMIT THE SCOPE OF TRIAL IN APPROPRIATE CIRCUMSTANCES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. DAMAGES RESULTING FROM THE LEGISLATIVE MANDATES ARE UNFORESEEABLE, CONSEQUENTIAL AND UNRECOVERABLE AS A MATTER OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. THE TESTIMONY OF INDIVIDUALS IS INADMISSIBLE TO ESTABLISH LEGISLATIVE INTENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

Baskett v. United States,
2 Cl. Ct. 356 (1983) ........ 4, 5

BMW Mfg. Corp. v. United States,
241 F.3d 1357 (Fed. Cir. 2001) ........ 11

California Fed. Bank v. United States,
395 F.3d 1263 (Fed. Cir. 2005) ........ 8

California Federal Bank v. United States,
54 Fed.Cl. 704 (2002) ........ 6

Cf. Underwood v. Waddell,
743 F. Supp. 1291 (S.D. Ind. 1990) ........ 12

Department of Energy v. Westland,
565 F.2d 685 (C.C.P.A. 1977) ........ 11

Fidelity Fin. Servs, Inc. v. Fink,
522 U.S. 211 (1998) ........ 10

Gardner Displays Co. v. United States,
171 Ct. Cl. 497 (1965) ........ 5

Gardner & North Roofing & Siding Corp. v. Board of Governors of the Fed. Reserve Sys.,
464 F.2d 838 (D.C. Cir. 1972) ........ 11

Gustafson v. Alloyd Co., Inc.,
513 U.S. 561 (1995) ........ 10

Holder v. Hall,
512 U.S. 874 (1994) ........ 10

Myerle v. United States,
33 Ct. Cl. 1 (1897) ........ 8

National Sch. of Aeronautics, Inc. v. United States,
135 Ct. Cl. 343 (1956) ........ 11

## TABLE OF AUTHORITIES
-continued-

**CASES** **PAGE(s)**

Northern Helex Co. v. United States,
207 Ct. Cl. 862 (1975), cert. denied, 429 U.S. 866 (1976) .............................................. 5

Palmerin v. City of Riverside,
794 F.2d 1409 (9th Cir. 1986) .............................................................................. 4

Ramsey v. United States,
121 Ct. Cl. 426 (1951) ........................................................................................ 5

SAB Constr., Inc. v. United States,
66 Fed. Cl. 77 (2005) ....................................................................................... 8, 9, 10

Selman v. United States,
204 Ct. Cl. 675 (1974) ........................................................................................ 10

United States Steel Corp. v. United States,
618 F.Supp. 496 (C.I.T. 1985) ............................................................................ 12

United States v. United Mine Workers,
330 U.S. 258 (1947) ........................................................................................... 10

White Mountain Apache Tribe of Az. v. United States,
10 Cl. Ct. 115 (1986) .......................................................................................... 4

**MISCELLANEOUS**

Dobbs Law of Remedies § 12.4(1), at 62 (2d ed. 1993) ........................................................ 5, 6

Farnsworth on Contracts, § 12.8, at 189 (2d ed. 1998) .......................................................... 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

NORTHERN STATES POWER COMPANY,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

No. 98-484C
(Senior Judge Wiese)

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY REGARDING MINNESOTA STATE LEGISLATION**

Pursuant to Rule 16 of the Rules of the Court of Federal Claims and the Court's pre-trial scheduling order, defendant, the United States, respectfully requests that this Court grant defendant's motion *in limine* concerning certain testimony that plaintiff, Northern States Power Company ("NSP"), proposes to offer regarding legislation passed by the Minnesota legislature in 1994 and 2003. The damages claimed by NSP, which resulted from the state legislation, are unrecoverable as a matter of law because they are unforeseeable, consequential damages. Furthermore, the testimony of individual legislators, lobbyists, and company employees is all inadmissible when offered to prove legislative intent.

## BACKGROUND

NSP bases four categories of damages upon legislative mandates issued by the Minnesota legislature in 1994 and 2003. Specifically, NSP claims damages for: (1) the addition of biomass energy capacity to NSP's energy resources for producing power; (2) the creation and administration of a fund to develop renewable energy sources; (3) the attempt to site a second, alternative site for NSP's dry storage facility, in addition to the site ultimately used by NSP; and

(4) a settlement between NSP and the Mdewakanton Dakota Tribe at Prairie Island ("the tribal settlement"), codified by the 2003 legislation.

NSP has argued that, as a result of the Department of Energy's ("DOE") delay in accepting spent nuclear fuel ("SNF"), NSP was required to license and construct on-site dry storage facilities at its Prairie Island and Monticello nuclear plants. Pl. Br. at 21.[1] To build its dry storage facility at Prairie Island, NSP sought a license from the Nuclear Regulatory Commission ("NRC"), and a Certificate of Need from the Minnesota Public Utilities Commission ("PUC"). Pl. Br. at 12. According to NSP, after its application for a Certificate of Need was filed in April of 1991, there began a debate over whether Minnesota law required legislative approval of Prairie Island's proposed dry storage facility. See Pl. Br. at 13-14. Throughout this process, NSP maintained that legislative approval was not required. The issue was finally resolved in 1993, when the Court of Appeals of Minnesota determined that NSP was required to obtain legislative authorization for its dry storage facility. Pl. Br. at 14.

In 1994, the Minnesota legislature passed legislation that authorized NSP to build a dry storage facility at the Prairie Island plant. The 1994 legislation also required NSP to add biomass energy capacity to its energy resources, to create a renewable development fund geared toward developing renewable energy sources, and to attempt to site an alternate dry storage facility in Goodhue County, in addition to the site on Prairie Island. Pl. Br. at 15.

In 2003, the original legislation was amended to increase the permissible capacity of the Prairie Island dry storage facility. Pl. Br. at 18. The 2003 legislation modified, but did not

---

[1] "Pl. Br. at __" refers to Northern States Power Company's Memorandum Of Contentions Of Fact And Law, dated September 1, 2006.

eliminate, the previously set biomass and renewable development fund mandates. Pl. Br. at 19. It also codified the tribal settlement, whereby NSP agreed to pay the Mdewakanton Dakota Tribe $2.5 million annually. Id.

NSP appears to base its claim for damages on the following alleged chain of events: DOE's delay in acceptance of SNF caused NSP's need to build dry storage. NSP applied for a Certificate of Need from the Minnesota PUC. NSP argued that it was not required to seek the approval of the state legislature. The administrative law judge ("ALJ") recommended a ruling that legislative approval was required. The PUC rejected the ALJ's recommendation, determining that legislative approval was not required. Following an appeal, the Minnesota Court of Appeals determined that legislative approval was required. The Minnesota legislature passed legislation that authorized the dry storage project and provided for the legislative mandates that are now claimed by NSP as damages resulting from DOE's partial breach of the Standard Contract.

NSP has indicated that it plans to present the testimony of numerous fact witnesses regarding the 1994 and 2003 legislation. Specifically, NSP has indicated that it may call Steven Novak and Gene Merriam,[2] both former state senators, who sponsored and/or helped pass the

---

[2] Six of the individuals listed by NSP as potentially testifying regarding the legislative mandates were not revealed to the Government until the exchange of witness lists on August 23, 2006. Immediately upon receipt of plaintiff's witness list, the Government sought depositions of the newly disclosed fact witnesses. While all of these depositions have been scheduled, as of the filing of this motion, we have not yet completed depositions of Steven Novak, Gene Merriam, Krista Sanda, Merle Anderson, and Jim Howard. Therefore, our understanding as to the depth of these witnesses' knowledge with regard to the legislative mandates is limited to the witness descriptions provided by NSP.

1994 legislation. Pl. Wit. List at 6, 9.[3] NSP also intends to call Krista L. Sanda, former Commissioner of the State of Minnesota's Department of Public Service, to discuss the legislation. Id. at 7. NSP may also call Merle Anderson and Carl Lehmann, both lobbyists and former NSP employees, who urged the state legislature to pass the 1994 and 2003 legislation. Id. at 2, 8. NSP also lists Jim Alders, Betsy Engelking, James Howard, Michelle Swanson, and Scott Wilensky as current or former NSP employees who may testify regarding the legislative mandates. Id. at 1, 3, 7-8.

## ARGUMENT

### I. THE COURT HAS THE POWER AND THE DUTY TO GRANT MOTIONS *IN LIMINE* TO LIMIT THE SCOPE OF TRIAL IN APPROPRIATE CIRCUMSTANCES

This Court has acknowledged that "[a] motion *in limine* is a recognized method under [RCFC] 16 and Fed. R. Civ. P. 16 for obtaining a pretrial order simplifying issues for trial," White Mountain Apache Tribe of Az. v. United States, 10 Cl. Ct. 115, 116 (1986), and "is a useful tool to prevent a party before trial from encumbering the record with irrelevant, immaterial or cumulative matters." Baskett v. United States, 2 Cl. Ct. 356, 367-68 (1983); see Palmerin v. City of Riverside, 794 F.2d 1409, 1413 (9th Cir. 1986) (motion *in limine* is useful to "resolve issues which would otherwise 'clutter up' the trial'). In fact, as this Court has previously acknowledged, the Court has a duty to exercise its power to exclude testimony or evidence in appropriate cases:

> There is no question under [RCFC] 16, that this court, as a trial court, has the power to issue pretrial orders simplifying issues for trial. Not only does this court have such power, it has a duty to

[3] "Pl. Wit. List at __" is a reference to Plaintiff's Witness List, dated September 1, 2006.

> exercise it in appropriate cases. This power allows the court, *inter alia*, to define the issues, facts, and theories actually in contention and to weed out extraneous issues. Too, this court also has the authority to issue pretrial rulings concerning the admissibility at trial of proposed testimony and documentary evidence.

Baskett, 2 Cl. Ct. at 359 (emphasis added).

## II. DAMAGES RESULTING FROM THE LEGISLATIVE MANDATES ARE UNFORESEEABLE, CONSEQUENTIAL AND UNRECOVERABLE AS A MATTER OF LAW

In seeking damages for a breach of contract, a party is not entitled to recover every "damage" that he might allege, regardless of how attenuated that "damage" may be. "In actions for breach of contract, the damages are ordinarily limited to the natural and probable consequences of the breach complained of." Ramsey v. United States, 121 Ct. Cl. 426, 434, 101 F. Supp. 353, 357 (1951); see 3 E. Allen Farnsworth, Farnsworth on Contracts, § 12.8, at 189 (2d ed. 1998) ("[o]ne is entitled to recover an amount [in damages] that will put one in as good a position as one would have been in had the contract been performed."). Remote, unforeseeable, and consequential damages "are not recoverable in a common-law suit for breach of contract." Northern Helex Co. v. United States, 207 Ct. Cl. 862, 886, 524 F.2d 707, 720 (1975), cert. denied, 429 U.S. 866 (1976); see Gardner Displays Co. v. United States, 171 Ct. Cl. 497, 504-05, 346 F.2d 585, 589 (1965); Ramsey, 121 Ct. Cl. at 434, 101 F. Supp. at 357. "This is especially true in suits against the United States for the recovery of common-law damages, such as the instant case." Northern Helex, 207 Ct. Cl. at 886, 524 F.2d at 720.

Consequential, or "special," damages for breach of contract "are those claimed to result as a secondary consequence of the defendant's non-performance." 3 D. Dobbs, Dobbs Law of Remedies § 12.4(1), at 62 (2d ed. 1993). They are distinguished from general damages, "which

are based on the value of the performance itself, not on the value of some consequence that performance may produce." Id. The following example distinguishes between general damages, which may be recovered against the Government in an appropriate case, and consequential damages, which can never be recovered against the Government:

> For example, if the defendant contracts to supply feed for cattle and fails to do so, general damages would be based on the value of the feed itself and might be calculated by giving the plaintiff the difference between the contract price and the market value. Consequential damages, in contrast, might be based on the loss of cattle from starvation, or diminished profits because the cattle could not be properly fattened before selling them.

3 D. Dobbs, supra, § 12.4(1), at 62-63.

The "damages" claimed by NSP, which resulted from the 1994 and 2003 Minnesota legislation, are by definition consequential damages. Assuming, for the sake of argument, that NSP can establish that it would not have built its dry storage facility but for DOE's partial breach of the contract, there are still multiple steps between DOE's breach and the Minnesota legislation that render the costs associated with the mandates consequential at best, and completely unrelated to the breach at worst.

"For damage to be direct there must appear no intervening incident . . . ." California Federal Bank v. United States, 54 Fed.Cl. 704, 713 (2002) (quoting Myerle v. United States, 33 Ct.Cl. 1, 27 (1897)). Following the chain of events as NSP alleges them, at least two steps took place between DOE's partial breach and the Minnesota legislature's decision to require NSP to take the actions provided in its 1994 and 2003 legislation. According to NSP: (1) DOE failed to begin acceptance of SNF by January 31, 1998; (2) NSP decided to build a dry storage facility; (3) NSP discovered, after much debate, that it was required to obtain legislative approval for its

dry storage facility; (4) the Minnesota legislature required NSP to add biomass capacity, create a renewable development fund, endeavor to site a second, alternative dry storage facility, and agree to a tribal settlement which NSP negotiated. These intervening events render the alleged damages consequential.

Furthermore, particularly with regard to the biomass and renewable development fund mandates, it is not clear that the damages alleged by NSP are in any way related to DOE's partial breach. NSP's primary argument appears to be that "NSP would not have been before the legislature to receive approval for the Prairie Island ISFSI but for the Government's impending breach" and, therefore, that any mandates contained in the 1994 and 2003 legislation must be caused by the Government's breach. Pl. Br. at 28. However, NSP's logic is overly simplistic. Even assuming that NSP's decision to build a dry storage facility was caused by DOE's breach, NSP cannot prove that any of the mandates would not have happened but for DOE's breach.

The Constitution of the State of Minnesota created and defined the powers of the Minnesota legislature. There is no provision in the state constitution limiting the legislature to acting upon only matters that are brought before it. See Constitution of the State of Minnesota, Article IV. NSP cannot prove that the state legislature, of its own initiative, would not have instituted biomass capacity requirements, regardless of whether NSP had ever asked for legislative approval of its dry storage facility. NSP cannot prove that the state legislature, of its own initiative, would not have mandated the creation of a renewable development fund, regardless of whether NSP was "before the legislature" to receive its approval. In short, while NSP's request for legislative approval may have been a convenient opportunity for the legislature

to act, NSP cannot prove that the legislature would not have acted in any case, independent of DOE's partial breach.

Section 351 of the Restatement (Second) of Contracts explains that:

> [d]amages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made. Loss may be foreseeable as a probable result of a breach because it follows from the breach (a) in the ordinary course of events, or (b) as a result of special circumstances, beyond the ordinary course of events, that the party in breach had reason to know.

Because damages cannot be awarded where the breach alleged is merely a "substantial factor" in the cause of a loss, "the causal connection between the breach and the [loss] must be definitely established." California Fed. Bank v. United States, 395 F.3d 1263, 1267-68 (Fed. Cir. 2005). As this Court recently explained, "[i]n order to recover a damage, there must be no intervening incident (not caused by the defaulting party) to complicate or confuse the certainty of the result between the cause and the damage; the cause must produce the effect inevitably and naturally, not possibly nor even probably." SAB Constr., Inc. v. United States, 66 Fed. Cl. 77, 88 (2005) (quoting Myerle v. United States, 33 Ct. Cl. 1, 26, 1800 WL 2024 (1897)), appeal pending, No. 2006-5009 (Fed. Cir.).

The facts of SAB Construction illustrate the exacting degree of causation required to demonstrate damages arising out of liability for breach of contract (as opposed to tort). There, the plaintiff sought damages for breach of contract due to the discovery of asbestos at the site of a renovation project. Among the damages sought were the litigation expenses incurred in separate litigation against another contractor, which litigation, according to the plaintiff, was caused by the "nature of the government's breach." SAB Constr., 66 Fed. Cl. at 88. The Court

rejected this theory of damage, explaining that the mere fact that the breach may have been a "but for" cause of the separate litigation, "this theory of causation is too broad. The decision to bring the suit, and to incur the costs, rested with the plaintiff. The plaintiff's decision breaks the chain of causation between the government's alleged breach and the litigation because the litigation did not flow inevitably and naturally from the government's alleged breach." Id.

NSP's claims for damages in this case similarly fall outside the ordinary course of events and are the result of several unfortunate intervening events beyond the Government's control. NSP argues that "it was foreseeable that siting a nuclear waste storage facility would require the Minnesota legislature to pass on its acceptability." Pl. Br. at 27. As an initial matter, it is anything but clear that the need for legislative approval was foreseeable, given that NSP itself argued that the legislature need not be consulted. Indeed, it did not become clear until the Minnesota Court of Appeals ruled in 1993, ten years after DOE and NSP entered into the contracts here at issue, that legislative approval was required.

Even if legislative intervention was foreseeable, the damage that NSP claims is hardly of the type that the parties to the contract could possibly have contemplated. When it signed the contracts in 1983, DOE could not have foreseen as a probable result of a future breach that the Minnesota legislature would require NSP to enter into a settlement agreement with the Mdewakanton Dakota Tribe, which had been NSP's neighbor since the Prairie Island plant came online, to pay the tribe $2.5 million annually. DOE could not have foreseen as a probable result of a future breach that the Minnesota legislature would require NSP to go to the expense of attempting to license two sites for the one dry storage facility that it was attempting to build. DOE could not have foreseen that the Minnesota legislature would choose this particular

opportunity to impose biomass and other renewable energy requirements. The legislative intervention alleged by NSP is the "intervening incident" that "complicate[s] or confuse[s] the certainty of the result between the cause and the damage," SAB Constr., 66 Fed. Cl. at 88. Thus, the damages that NSP claims to have suffered are unforeseeable and indirect and unrecoverable as a matter of law.

## III. THE TESTIMONY OF INDIVIDUALS IS INADMISSIBLE TO ESTABLISH LEGISLATIVE INTENT

Even if NSP could recover damages for the costs associated with the legislative mandates, it cannot prove its case using the post-legislative statements of former legislators or, worse, the statements of company employees who lobbied for the legislation.

The general rule is that post-passage remarks cannot establish the legislative intent of the enacting legislative body. See Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 579 (1995) ("[a]fter-the-fact statements by proponents of a broad interpretation are not reliable indicator of what Congress intended when it passed the law, assuming extratextual sources are to any extent reliable for this purpose"); United States v. United Mine Workers, 330 U.S. 258, 281-82 (1947) (finding remarks of legislators made 11 years after passage of act not probative of intent of drafters). The Supreme Court has rejected reliance upon both Committee Reports and floor statements as authoritative sources of legislative intent. See Fidelity Fin. Servs, Inc. v. Fink, 522 U.S. 211, 218-20 (1998); Holder v. Hall, 512 U.S. 874, 932 (1994) (Thomas, J., concurring in judgment).

To the extent that NSP is seeking to develop some sort of "legislative history" behind the 1994 and 2003 legislation, the opinions of individuals who may have worked on or with the laws and regulations at issue are not admissible. See, e.g., Selman v. United States, 204 Ct. Cl. 675,

685 n.6 (1974) (ruling that the affidavit of a Senator concerning particular legislation was "without evidentiary value" because "no member of a legislature, outside of the legislature, is empowered to speak with authority for that body"). As the Court of Claims explained in rejecting reliance upon the testimony of a former senator concerning the intent of the Senate in connection with particular legislation, a legislative body speaks through legislation enacted by a body as a whole, not through an individual:

> The plaintiff produced as a witness a former member of the United States Senate who was Chairman of the Veterans Subcommittee of the Senate Labor and Public Welfare Committee which considered the bill which ultimately became Public Law 610. This witness gave oral testimony as to what was intended by Public Law 610. At first blush it might seem that this would be the ideal way to learn the intent of a legislative body, to get it straight from the mouth of a responsible member of the legislature. Second thought leads to the conclusion that the practice would be intolerable. A legislature speaks through statutes, and, in cases where the statutes require interpretation, through committee reports and debates. No member of a legislature, outside the legislature, is empowered to speak with authority for the body. If he may testify voluntarily, other members of his legislative body with different views or different recollections may be summoned to give their differing versions. The debate, which, so far as the lawmaking body is concerned, should have been ended by the enactment of the statute, would be transferred to the court, with disturbing possibilities of embarrassment and friction.

National Sch. of Aeronautics, Inc. v. United States, 135 Ct. Cl. 343, 142 F. Supp. 933, 938 (1956); see Department of Energy v. Westland, 565 F.2d 685, 690-91 (C.C.P.A. 1977) (rejecting testimony of former congressman concerning proper interpretation of statute because "no member of the legislature is empowered to speak for that body");[4] Gardner & North Roofing &

---

[4] Decisions of the Court of Customs and Patent Appeals "are binding precedent on this Court." BMW Mfg. Corp. v. United States, 241 F.3d 1357, 1362 n.3 (Fed. Cir. 2001).

Siding Corp. v. Board of Governors of the Fed. Reserve Sys., 464 F.2d 838, 842 (D.C. Cir. 1972) (rejecting letter from congressman written one year after passage of legislation, which was not part of legislative history and therefore could not be considered in determining the intent of the legislature); United States Steel Corp. v. United States, 618 F.Supp. 496, 500 n.5 (C.I.T. 1985) ("post enactment statements, even those by the authors of the legislation, cannot be considered by the court, because the statements cannot demonstrate intent at the time of passage"). As discussed above, such a pursuit is impermissible and wasteful because the Court decides questions of law and is the sole arbiter of the law and its applicability.

NSP seeks to present the testimony of Steven Novak and Gene Merriam, both former state senators who worked on the legislation at issue. Any testimony by these individual senators as to the intent of the Minnesota legislature constitutes inadmissible hearsay. Simply put, Messrs. Novak and Merriam cannot possibly have personal knowledge of "congressional intent" because that is not something susceptible to personal knowledge. Cf. Underwood v. Waddell, 743 F. Supp. 1291, 1297 (S.D. Ind. 1990) (holding that affidavit of co-author of legislation stating purpose of legislation constituted hearsay).

The proposed testimony of Messrs. Anderson and Lehmann, NSP lobbyists who urged the state legislature to pass the 1994 and 2003 legislation, and that of Ms. Sanda, former Commissioner of the State of Minnesota's Department of Public Service, is of even less relevance or reliability than testimony from former legislators. While these individuals most certainly can testify as to why they wanted the legislature to pass these laws, that testimony is irrelevant to any determination of actual legislative intent, and these individuals have no basis upon which to know why the legislature ultimately decided to enact these laws. The remainder

of the witnesses that NSP expects to testify regarding the legislative mandates, while possibly able to testify about how NSP complied with the legislative mandates, cannot provide any insight into why the legislature took the actions it did, whether it would have done so absent any breach, or whether the parties could have foreseen, a decade earlier, that the 1994 and 2003 legislation would be a probable result of a future breach of contract.

Based upon the estimates contained within NSP's witness list, the testimony that NSP plans to present on this issue could consume more than 13 hours of direct examination alone. With cross-examination, at least two days of trial time in Minneapolis would be devoted to largely inadmissible testimony regarding damages that are unrecoverable as a matter of law. In the interest of simplifying the issues for trial, it is appropriate, pursuant to RCFC 16, to exclude this testimony.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court grant the Government's motion *in limine* and preclude NSP from offering testimony concerning legislation passed by the Minnesota legislature in 1994 and 2003.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Heide L. Herrmann
HEIDE L. HERRMANN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305-3315
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

October 4, 2006

Attorneys for Defendant

CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 4th day of October, 2006, a copy of foregoing "DEFENDANT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY REGARDING MINNESOTA STATE LEGISLATION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Heide L. Herrmann