# Appendix

Page 574

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

YANKEE ATOMIC ELECTRIC ) COMPANY, CONNECTICUT YANKEE ) Case Nos.: ATOMIC POWER COMPANY, and MAINE ) 98-126C YANKEE ATOMIC POWER COMPANY, ) 98-154C Plaintiffs, ) 98-474C
V. )
THE UNITED STATES, ) Consolidated
Defendant. )

Courtroom Number 7

National Courts Building
717 Madison Place, N.W.
Washington, D.C.

Wednesday, July 14, 2004

VOLUME 3

The parties met, pursuant to the notice of the Judge, at 10:01 a.m.

BEFORE: THE HONORABLE JAMES F. MEROW

Page 575

APPEARANCES:
ON BEHALF OF YANKEE ATOMIC ELECTRIC COMPANY, CONNECTICUT YANKEE ATOMIC POWER COMPANY and MAINE YANKEE ATOMIC POWER COMPANY:
JERRY STOUCK, ESQ.
ROBERT SHAPIRO, ESQ.
PETER J. SKALABAN, JR., ESQ.
MICHAEL R. MINER, ESQ.
VIVEK H. HATTI, ESQ.
Spriggs & Hollingsworth
1350 I Street, N.W.
Washington, D.C. 20005
(202) 898-5800

ON BEHALF OF YANKEE ATOMIC ELECTRIC COMPANY and CONNECTICUT YANKEE ATOMIC POWER COMPANY
GERALD GARFIELD, ESQ.
General Counsel
Day, Berry & Howard, LLP
CityPlace I
Hartford, Connecticut 06103
(860) 275-0182

Page 576

APPEARANCES CONTINUED:

ON BEHALF OF MAINE YANKEE ATOMIC POWER COMPANY:
JOSEPH D. FAY, ESQ.
General Counsel
Maine Yankee
321 Old Ferry Road
Wiscasset, Maine 04578
(207) 882-5603

ON BEHALF OF THE DEFENDANT:
HAROLD LESTER, JR., ESQ.
JOHN EKMAN, ESQ.
MARIAN E. SULLIVAN, ESQ.
HEIDE L. HERRMANN, ESQ.
R. ALAN MILLER, ESQ.
KEVIN B. CRAWFORD, ESQ.
RUSSELL SHULTIS, ESQ.
U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530
(202) 305-7562

** Index appears at the end of transcript **

Page 577

P R O C E E D I N G S

MR. SHAPIRO: Your Honor, we're ready to proceed with Dr. Bartlett.

THE COURT: Good.

MR. SHAPIRO: The plaintiffs call John Bartlett.

THE COURT: Okay.

Whereupon,
JOHN WESLEY BARTLETT
was called as a witness, and, having first been duly sworn, was examined and testified as follows:

MR. SHAPIRO: Your Honor, once again, we have a notebook with some documents we would like to provide the witness and to provide copies to you as well, and to government counsel.

I know we have the fan, Your Honor, which is pleasant. But, obviously, if you have any trouble hearing, let us know.

THE COURT: I'm more worried about the reporter.

DIRECT EXAMINATION
BY MR. SHAPIRO:

Q Would you state your name for the record, please.

A My name is John Wesley Bartlett.

Page 590

when you left TASC?
A Well, I was nominated by President Bush to become director of the Office of Civilian Radioactive Waste Management. The nomination was put on hold for a while. And I was sworn into the position in April of 1990.
Q Why was your nomination put on hold for a while?
A It was part of the State of Nevada's efforts to slow down the program, basically.
Q And the director is the top position within the Office of Civilian Radioactive Waste Management?
A Yes, it.
Q And that's a presidentially appointed, Senate confirmed position?
A Senate confirmed, yes.
Q And who did you report to as director?
A The Secretary of Energy, Secretary Watkins through the undersecretary like all the other – it's a position comparable to an assistant secretary.
Q And how long did you hold the position of Director of OCRWM?
A Through the Bush administration, until January of 1993.
Q Can you describe for us, what were your

Page 591

primary responsibilities at OCRWM at that time?
A Basically, your responsibility is to technically direct and manage all activities of the office. And you represent the office to the Congress, to your various constituencies, of whom there are about 400. You do the program planning and budgeting and direct the staff in their activities, and direct the contractors in their activities. It's a top-level responsibility for that function.
Q I would like you to provide us with a description of some of the major program activities going on during your tenure. Maybe if we split it up, focusing on, first, disposal of spent fuel. What was the major program activity at that time?
A Well, the major activity, of course, this being soon after passage of the Nuclear Waste Policy Amendments Act, was the characterization of the Yucca Mountain site to determine if it was a suitable location for disposal. So we have site characterization of Yucca Mountain.
But in addition, we had all the other program elements for a comprehensive program. And that involved development of alternative transport cask designs, development of an interim storage facility, development of the technologies and systems

Page 592

for receipt of spent fuel from the reactors for transport to either a disposal site or interim storage site.
So it was a comprehensive effort for all aspects of the waste management system.
Q Dr. Bartlett, you link the focus on characterization of Yucca Mountain to passage of the Nuclear Waste Policy Amendments Act of 1987. Why is that?
A Well, that Act specifically selected from the candidates that were available, Yucca Mountain, as the single site to be characterized to determine if it was a suitable location for disposal.
Q Another of the activities that you mentioned was working on interim storage. What sorts of work were you doing looking at interim storage at that time?
A Well, a major candidate for a piece of the waste management system was what was known at the time as a monitored retrievable storage facility. MRS.
That's since been called other things, like a central interim storage facility. But the idea was to have the central location to which spent fuel can be taken from reactors in order to diminish the inventory of spent fuel at the reactors and to have a staging

Page 593

location for disposal if the disposal site wasn't ready.
Q Why was it considered important to have a centralized interim storage facility or monitored retrievable storage facility?
A Well, as it turned out, the schedules for activities were such that the rate at which the program was proceeding relative to the date that had been set, receipt date of January 31, 1998 for beginning of receipt from reactors for disposal, the program wasn't going to make it.
It was very clear that the disposal site would not be ready until later. As a matter of fact, the date that was set in a program reassessment document prepared by Secretary Watkins was 2010. That is still the target date for beginning of disposal.
So it was expected it would be unable, it would be impossible to take spent fuel directly from the reactors, beginning January 31, 1998 to disposal, because there would be no place for disposal.
So the objective was to have an interim storage facility that could be the point of receipt and hold the material in what we call "lag storage" until disposal site was ready.
Q I want to come back to some of those issues

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ORIGINAL

YANKEE ATOMIC ELECTRIC COMPANY, )
et al., )
)
Plaintiffs, )
vs. ) No. 98-126C
UNITED STATES, )
Defendant. )

DEPOSITION OF MICHAEL J. LAWRENCE, VOLUME I

May 20, 2002
Richland, Washington

Austria.
Q. And that was attractive?
A. Yes.
Q. Why did you leave the diplomatic post in Austria?
A. Four years was enough time.
Q. You worked your way back to beautiful Tri-Cities?
A. I went to Sante Fe.
Q. Before Chem Nuclear, where did you work?
A. I was the manager of the Richland Operations Office for the Department of Energy in Richland, Washington.
Q. So I'm going to get my dates mixed up. When did you start with the Chem Nuclear position?
A. August 1991 -- 1990. I'm sorry. August 1990.
Q. And when did you become manager of the DOE Richland operations office?
A. June 1984.
Q. What did you do as manager of Richland operations office?
A. I was responsible for all the operations and programs associated with the Hanford site.
Q. Did any of those programs have a relationship to RW?
A. Yes.
Q. Which ones?

Page 3378

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

YANKEE ATOMIC ELECTRIC )
COMPANY, CONNECTICUT YANKEE ) Case Nos.:
ATOMIC POWER COMPANY, and MAINE ) 98-126C
YANKEE ATOMIC POWER COMPANY, ) 98-154C
Plaintiffs, ) 98-474C
v. )
THE UNITED STATES, )
Defendant. )

Courtroom Number 5

National Courts Building
717 Madison Place, N.W.
Washington, D.C.

Monday, August 2, 2004

VOLUME 15

The parties met, pursuant to the notice of the Judge, at 10:03 a.m.

BEFORE: THE HONORABLE JAMES F. MEROW

Page 3379

APPEARANCES:
ON BEHALF OF YANKEE ATOMIC ELECTRIC COMPANY, CONNECTICUT YANKEE ATOMIC POWER COMPANY and MAINE YANKEE ATOMIC POWER COMPANY:
JERRY STOUCK, ESQ.
ROBERT SHAPIRO, ESQ.
CATHERINE R. BAUMER, ESQ.
PETER J. SKALABAN, JR., ESQ.
Spriggs & Hollingsworth
1350 I Street, N.W.
Washington, D.C. 20005
(202) 898-5800

ON BEHALF OF YANKEE ATOMIC ELECTRIC COMPANY and CONNECTICUT YANKEE ATOMIC POWER COMPANY
MERRILL J. ATKINS, ESQ.
Assisting General Counsel
19 Midstate Drive
Auburn, Massachusetts 01560
(508) 721-3042

Page 3380

APPEARANCES CONTINUED:

ON BEHALF OF MAINE YANKEE ATOMIC POWER COMPANY:
JOSEPH D. FAY, ESQ.
General Counsel
Maine Yankee
321 Old Ferry Road
Wiscasset, Maine 04578
(207) 882-5603

ON BEHALF OF THE DEFENDANT:
HAROLD LESTER, JR., ESQ.
JOHN EKMAN, ESQ.
MARIAN E. SULLIVAN, ESQ.
HEIDE L. HERRMANN, ESQ.
R. ALAN MILLER, ESQ.
KEVIN B. CRAWFORD, ESQ.
RUSSELL SHULTIS, ESQ.
U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530
(202) 305-7562

** Index appears at the end of transcript **

Page 3381

P R O C E E D I N G S
MR. STOUCK: Your Honor.
THE COURT: Yes.
MR. STOUCK: Good morning.
THE COURT: Good morning.
MR. STOUCK: I believe I owe the Court and Mr. Lester a response on whether our case is done. It was left sort of dangling on Thursday. And I would like to address that if I may.
THE COURT: Sure.
MR. STOUCK: Okay. And, frankly, it provides an opportunity, I think, to address in a more comprehensive way -- I think we have this 1726 question.
THE COURT: Oh, fine.
MR. STOUCK: And I would like to do that. It's come up most days but it's been a little piecemeal. I want to make sure we've not been whipsawed, on the one hand under a pretrial process that encourages dealing with a lot of details out of court, and then we get to court and then we are told that we really need to have more witnesses here.
So if I could just address our position on this --
THE COURT: Sure.

the defense appropriation, and you're going to have to come up with the other 749 million. And right now my understanding is that there are discussions at very senior levels within the Office of Management and Budget and Congress in order to try to address this.
But the simple answer to your question, and I didn't mean to go on, is we do not have direct access to that fund. It has to be appropriated by Congress.
And the industry over the years has made several attempts to try to get the waste fund used for its original purposes. And that legislation up until this point has not been passed.
THE COURT: Okay. Anything further?
MS. SULLIVAN: Nothing further, Your Honor. Thank you.
THE COURT: Okay. You're excused. And thank you very much for your testimony.
MR. MILLER: Your Honor, our next witness will be Mr. Robert Morgan.
THE COURT: Okay.
Whereupon,
ROBERT L. MORGAN
was called as a witness, and, having first been duly sworn, was examined and testified as follows:



DIRECT EXAMINATION
BY MR. MILLER:
Q Good afternoon, Mr. Morgan. Would you state your full name for the record, please, sir.
A Robert L. Morgan.
Q And you are a former director of what started out to be the Nuclear Waste Policy Act project office, and what during your tenure became the Office of Civilian Radioactive Waste Management; is that correct?
A Yes. That's correct.
Q As we're talking here today, Mr. Morgan, you have to try to remember to let me finish my question before you answer so the court reporter doesn't have to try to decide which one of us she wants to reflect in the record. Do you think you can do that, sir?
A Yes.
Q All right. Thank you.
THE COURT: You can ask him questions, too.
MR. MILLER: I beg your pardon, Your Honor.
THE COURT: Go ahead. Off-the-record comments here.
BY MR. MILLER:
Q Mr. Morgan, I would like before we begin your substantive testimony to ask you just a few



questions about your educational background and your work experience.
So I'll ask you first, sir, if you graduated from the United States Military Academy in 1952?
A Yes.
Q And what degree did you obtain when you graduated?
A It's a bachelor of science in military engineering.
Q Okay. And at that time, you were commissioned as a second lieutenant in the United States Army?
A Yes. In the United States Army Corps of Engineers.
Q Okay. And if you will, please, sir, if you could just summarize for the Court what your subsequent assignments in the Army were.
A After graduation, there was an interim assignment of about 2-1/2 months in Fort Lewis, Washington on my way to Korea. I served with the 25th infantry division in Korea. After the war ended, I transferred to Japan. From Japan, I went to Fort Bragg with the 82nd airborne division.
And after 2 years there, the Army selected me to go to MIT. I spent 2 years there and received a



master of science in civil engineering and a master of science in nuclear engineering.
Subsequent to that, I went to Idaho Falls, Idaho, assigned to the U.S. – to the Atomic Energy Commission. Following that, I went to an advanced course at Fort Belvoir. Then to Indonesia as a special assistant to the ambassador for civic action.
After my return from there, I resigned my commission from the military and joined the Atomic Energy Commission in 1965. Initially assigned for a year in Savannah River. I transferred to Southern California for reactor development. Spent 7 years there. I was selected as the deputy manager at Savannah River. I spent 7 years as deputy manager and then 8 years as manager before I retired from DOE at that time.
Q Okay, sir. And you retired from DOE in what year?
A 1988.
Q Okay, sir. Your assignment to the – to Idaho Falls – and I believe you mentioned that you were working with the Atomic Energy Commission at that time?
A That's correct.
Q And what was – what did that assignment

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - - - -x

YANKEE ATOMIC ELECTRIC COMPANY :
(98-126C)(Merow, S.J.) :
CONNECTICUT YANKEE ATOMIC POWER COMPANY :
(98-154C)(Merow, S.J.) :
FLORIDA POWER & LIGHT COMPANY
(98-483C)(Wilson, J.) :
NORTHERN STATES POWER COMPANY :
(98-484C)(Wiese,J.) :
DUKE POWER, A Division of :
DUKE ENERGY CORP. :
(98-485C)(Sypolt,J.) :
INDIANA MICHIGAN POWER COMPANY :
(98-486C)(Hodges, J.) :
SACRAMENTO MUNICIPAL UTILITY DISTRICT :
(98-488C)(Yock, S.J.) :
SOUTHERN NUCLEAR OPERATING COMPANY, :
et al. :
(98-488C)(Yock, S.J.) :
COMMONWEALTH EDISON COMPANY :
(98-621C)(Hewitt, J.) :
BOSTON EDISON COMPANY :
(99-447C)(Allegra, J.) :
GPU NUCLEAR, INCORPORATED :

CERTIFIED COPY

(00-440C)(Bush, J.) :
WISCONSIN ELECTRIC POWER COMPANY :
(00-697C)(Merow, S.J.) :
POWER AUTHORITY OF THE STATE OF NEW YORK :
(00-703C)(Damich, J.) :
OMAHA PUBLIC POWER DISTRICT :
(01-115C)(Bush, J.) :
NEBRASKA PUBLIC POWER DISTRICT :
(01-116C)(Sypolt, J.) :
TENNESSEE VALLEY AUTHORITY :
(01-249C)(Bruggink, J.) :
Plaintiffs, :
v. :Discovery
THE UNITED STATES, :Judge:
Defendant. :(Judge
- - - - - - - - - - - - - - - - - - - - -xSypolt)

McLean, Virginia
Wednesday, March 13, 2002

Continued deposition of BILLY M. COLE, a witness, recalled for examination by counsel for Plaintiffs in the above-entitled matter, pursuant to notice, the witness being duly sworn by CATHERINE S. BOYD, a Notary Public in and for the Commonwealth of Virginia, taken at the offices of Shaw Pittman, LLP, 1650 Tysons

MR. MACDONALD: I think that's it for my questions.

MR. MILLER: I just have a couple.

EXAMINATION BY COUNSEL FOR THE DEFENDANT

BY MR. MILLER:

Q. Mr. Cole, you have never worked for DOE, have you?

A. No, other than just as a contractor.

Q. Right, but you have never been a DOE employee?

A. I have never been a DOE employee, no.

Q. So other than having voiced your opinion on the things that the people at DOE with whom you worked told you, you can't speak for DOE, can you?

A. No, I cannot.

Q. No further questions.

A. DOE always made it pretty clear to me. I mean it was just a understood rule as a contractor you don't speak for the department.

MR. MACDONALD: I think we would like to leave the deposition open pending some of the privilege and document issues.

MS. HEWITT: There is a lot, whole lot