IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NORTHERN STATES POWER COMPANY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 98-484C |
| v. | ) | (Senior Judge Wiese) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S SUPPLEMENTAL BRIEF REGARDING CAUSATION

Pursuant to the Court's order issued from the bench on November 7, 2006, defendant, the United States, submits this supplemental brief regarding the burden of proof of plaintiff, Northern States Power Company ("NSP"), to establish that the delay of the Department of Energy ("DOE") in accepting spent nuclear fuel ("SNF") from NSP pursuant to the Standard Contract for the removal of such fuel was the proximate cause of the damages NSP seeks in this matter.[1] As we explain below, the unequivocal law in this circuit is that the NSP must establish that the costs it now seeks as damages would not have been incurred had DOE timely begun performance under the Standard Contract.

DISCUSSION

In Indiana Michigan Power Company v. United States, 422 F.3d 1369 (Fed. Cir. 2005), the United States Court of Appeals for the Federal Circuit plainly defined the scope of a spent nuclear fuel plaintiff's burden with respect to damages. In Indiana Michigan, as in this case, the plaintiff sought damages for its efforts to expand its storage capabilities and, specifically, the

[1] We discussed the issue of causation in our pre-trial contentions of fact and law in this case and respectfully incorporate by reference the discussion there. This brief is intended to supplement our prior discussion of this issue.

costs that it incurred for the rerack and expansion of its spent nuclear fuel pool. Id. at 1372. In addressing these costs, which (like NSP in this case) it characterized as "mitigation damages," the Federal Circuit explained that "[t]he presence of a duty to mitigate does not perforce make the pre-breach costs incurred by Indiana Michigan to store its SNF recompensable; appellant must prove foreseeability, causation, and reasonableness." Id. at 1376.[2] The Federal Circuit's application of this standard in Indiana Michigan and, critically, its holding that the utility in that case had not met its burden provide clear guidance as to the scope of a SNF plaintiff's tripartite burden. Specifically, the Federal Circuit affirmed the trial court's determination that the utility had failed to demonstrate that it would not have performed a rerack of its spent fuel pool were it not for the breach of the standard contract: "[A]ppellant's decision to perform a full, instead of a partial, rerack in 1995 was purely a business judgment which it would have had to purse irrespective of DOE's partial breach." Id. Stated differently, the Federal Circuit affirmed the trial court's finding that the utility had failed to meet its burden of proof because the utility would have made the same business judgment to rerack its spent fuel pool even had DOE timely commenced performance.

The Federal Circuit's holding in Indiana Michigan is binding precedent upon this Court and necessarily dictates the appropriate framework for the resolution of the issues presented in this case. For this reason, the question is not, as NSP has repeatedly and mistakenly contended, simply whether the decision to rerack was a "reasonable" business judgment. Indeed, Indiana Michigan makes clear that the mere fact that a utility has made a reasonable business judgment

---

[2] This statement alone forecloses the argument, which NSP has advanced, that the foreseeability requirement is not applicable where a party seeks "mitigation damages."

to expand its storage capacity does not mean that that the cost of that expansion is recoverable. Instead, the utility must also demonstrate, as a means of demonstrating that the damages which it claims to have incurred were caused by the breach, that it would not have undergone the expansion regardless of any breach.[3]

The Court's recent decision in Pacific Gas & Electric Co. v. United States, Nos. 04-0074C & -0075C, 2006 WL 2925649 (Fed. Cl. Oct. 13, 2006), recognizes the controlling nature of the Federal Circuit's decision in Indiana Michigan and the general principle that, when seeking expectancy damages a plaintiff must establish a plausible "but for" world. In PG&E, the Court addressed the applicable legal standard by recognizing at the outset that "[t]he goal of awarding damages for breach of contract – that of placing the injured party in as good a position as it would have had the breaching party fully performed the contract – is well settled." Id. at *41. Significantly, in reaching that conclusion, the Court cited to, among other authorities, the

[3] NSP's assertion that it acted reasonably in opting to construct a dry storage facility only answers a small part of the relevant question and, in fact, proves too much. Indeed, we do not dispute that NSP acted reasonably in the "actual" world by determining in 1988, in light of the real possibility of delay in DOE's performance until 2010, to construct a dry storage facility. However, the reasonableness of NSP's decision in the actual world also extends to the "but for" world. As in Indiana Michigan, the evidence suggests that NSP would have made the same business decision even had DOE timely commenced performance. Although NSP's witnesses now claim that the company "would have reracked" had they believed that DOE would commence performance in 1998 and begin accepting spent fuel from NSP in 1999, the question for the Court to determine, in light of Indiana Michigan, is whether these assertions hold true in light of the facts that (1) even under a best-case scenario, a rerack would only have bridged the gap until 1999; and (2) DOE was not obligated to begin accepting fuel until an unspecified date in 1999. If the Court finds that, assuming timely performance (that is, in the "but for" world), NSP would have exercised its reasonable business judgment to construct dry storage and avoid the "razor thin" margin that reracking would have created, it necessarily follows that NSP would have opted for dry storage in the "but for" world and that, under Indiana Michigan, NSP will have failed to establish its burden of proving that the decision to construct dry storage was caused by the breach.

Federal Circuit's decision in Indiana Michigan. Id. Further, in addressing the issue of the DOE's contractual obligation regarding a rate of acceptance under the Standard Contract, the Court acknowledged that "[p]laintiff bears the burden of 'establishing what might have been' with reasonable certainty had defendant performed the Standard Contract." Id. at *49; see also id. at *67 ("To derive the proper amount for the damages award, the cost resulting from the breach must be reduced by the costs, if any, that the plaintiff[] would have experienced absent a breach."). The Court further clarified that PG&E's alleged expectancy damages could only be measured by reference to a world where DOE performed and that, without reference to performance world, the measure of plaintiff's damages would be "irrelevant." Id. at *49; see PSEG Nuclear, L.L.C. v. United States, No. 05-5162, 2006 WL 2801877, at *7 (Fed. Cir. Sept. 29, 2006) ("Any issues related to the types of damages permitted under the contract, if any, and the extent of those damages can be resolved by solely resolving the DOE's contractual obligations.").

The principle upon which the Federal Circuit relied in Indiana Michigan and upon which the Court relied in PG&E is not unique to SNF cases or to cases involving the "mitigation costs" that NSP seeks. Indeed, any plaintiff who seeks to be placed in the position that it would have occupied had the contract been performed[4] bears the burden of establishing a "plausible but-for

---

[4] This characterization is typically referred to as the party's "expectation interest." See Restatement (Second) of Contracts § 344(a) (1981). Although NSP refers repeatedly to "mitigation damages" in its pretrial brief, it is the damage to NSP's expectation interest (as opposed to its reliance or restitution interest) for which NSP seeks recovery. Indeed, on page 2 of its pretrial brief, NSP refers to the state of the law concerning "expectancy damages," and the very first sentence of the section of its brief entitled "Legal Authority" invokes its entitlement to relief pursuant to an expectancy theory: "[G]enerally, the remedy for breach of contract us damages sufficient to place the injured party in as good as a position as it would have occupied had the breaching party fully performed." NSP Pretrial Brief, at 20 (emphasis added; quotation

world," Bluebonnet Savings Bank, FSB v. United States, 67 Fed. Cl. 231, 238 (Fed. Cl.), aff'd, Nos. 06-5016, 06-5024, 2006 WL 2946508 (Fed. Cir. Oct. 11, 2006), and of demonstrating "what might have been," Glendale Fed. Bank, FSB v. United States, 239 F.3d 1374, 1380 (Fed. Cir. 2001). As a matter of well-established contract law, the failure of a plaintiff to prove that certain costs would not have been incurred in the "but for" world precludes a finding that the incurrence of costs was "caused" by the breach.

In fact, as the United States Court of Appeals for the First Circuit recognized in rejecting an argument substantially similar to NSP's argument in this case, the fact that an entity entitles its damages as "mitigation damages" does not somehow eliminate the requirement that the entity prove, "as an element of its case, the extent to which it was *damaged* by the . . . breach:"

> Anchor argues . . . that, in order to prove its damages, all it had to do was quantify Narragansett's ill-gotten revenue. In its view, once it had quantified such revenue, it became Narragansett's and Pfeiffer's burden to prove the extent to which the revenue was replaceable (as part of their burden of proving failure to mitigate damages).
>
> This argument is unconvincing. The law does not contemplate that a party victimized by . . . breach of contract prove, without reference to the rest of the record, the narrow effects of the fraud or breach; it requires that party to prove, *as an element of its case*, the extent to which it was *damaged* by the fraud or breach. In the face of the uncontroverted evidence showing that KOVR still would have generated most of the revenues it obtained by running local commercials when it should have been running the ABC newsbrief, it is apparent that Anchor, by proving only the amount of revenue traceable to the improper practice, failed to provide the jury with a basis upon which to premise a reasoned *damages* finding. Thus, Anchor failed to prove an element of its case.

---

marks omitted).

> **While ingenious, it is incorrect to suggest that Narragansett and Pfeiffer bore the burden of proving the extent to which the ill-gotten income was replaceable as part of their duty to prove failure to mitigate damages. The doctrine of mitigation of damages imposes on a party injured by either a breach of contract or a tort the duty to exercise reasonable diligence and ordinary care in attempting to minimize its damages**. *Black's Law Dictionary* 1002 (6th ed. 1990). **The doctrine thus *presupposes*, as a threshold matter, the existence of a causal nexus between the damages sought and the breach or tort, looking at whether and to what extent an intervening cause (i.e., a plaintiff's own negligence) may have contributed to these damages. Here, the question is not whether and to what extent Anchor's own conduct contributed to its damages; it is, rather, the threshold question of whether the damages Anchor sought were caused by the conduct of which Anchor complained. Accordingly, the doctrine of mitigation of damages is completely inapposite**.

Fleet Nat'l Bank v. Anchor Media Television, Inc., 45F.3d 546, 560-62 (1st Cir. 1995) (italics in original; underlining and bold added).

Tellingly, NSP has accepted this burden by eliciting testimony that, in a world where DOE performed pursuant to its obligations under the Standard Contract, NSP would have engaged in reracking the spent fuel pool at the Prairie Island nuclear facility rather than pursuing dry storage. See Tr. 873-77 (Kapitz); see also Report of Kenrich Group LLC, at 22 (Aug. 1, 2006) ("As discussed previously had there been a reasonable basis for NSP to be confident that DOE would show up in 1999 or shortly thereafter, a rerack of the spent fuel pool would have been performed."). As further evidence of its acceptance of its burden to establish the "but for" world, NSP has expressly removed the estimated costs of a rerack in the "but for" world from in its damages model. NSP Pretrial Brief, at 22. Undoubtedly, NSP has included this offset because of its recognition that an accurate assessment of any damage caused by breach of the Standard Contract requires the establishment of a "but for" world in which certain expenses

(such as the cost of a re-rack) would have been incurred and in which certain other expenses (such as those for which it seeks recovery in this lawsuit) would not. In other, words, NSP has provided the Government with a credit for the re-racking that it claims it would have performed had DOE begun acceptance pursuant to its obligations under the Standard Contract.

In sum, both the law of this circuit and the actions of plaintiff in this litigation make clear that, to be awarded damages in this case, NSP must establish that DOE's breach was the proximate cause for its claimed costs. Simply put, NSP must show that, had DOE performed under the Standard Contract, it would not have incurred the costs that it now seeks. Accordingly, it is incumbent upon NSP to prove a plausible "but for" world. Should NSP fail to do so, its alleged damages in this matter are "irrelevant."

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

OF COUNSEL:

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

ALAN J. LO RE
Senior Trial Counsel

ANDREW P. AVERBACH
STEPHEN FINN
Trial Attorneys
Department of Justice

November 8, 2006

s/Heide L. Herrmann
HEIDE L. HERRMANN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7561
Fax: (202) 307-2503

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 8th day of November 2006, a copy of foregoing "DEFENDANT'S SUPPLEMENTAL BRIEF REGARDING CAUSATION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harold D. Lester, Jr,